At this time, we'll hear Singh v. Sessions. Good morning. Good morning, Your Honor. My name is Amy Nussbaum-Gell. I represent the petitioner, Mr. Gurdev Singh. At the time of his application for asylum, he was a 27-year-old religious Sikh man from Haryana in India. He was a member of the Indian National Lakhdal Party, which represented the poor farmers and poor individuals in Haryana. He was persecuted twice. He was badly beaten with fists and sticks on two occasions by the Congress Party in India. He was severely beaten, which required hospitalization the second time of three days, with 10 days' rest. This is all based on his own testimony. Yes, based on his testimony and a doctor's letter that was admitted. And the doctor's letter was not very specific in it and had no indicia of authenticity. Except he wasn't found to be not credible based on that. That the only credibility finding that the judge made was with respect to the fact that he added an additional fact at the hearing, that he added a new fear, which was very real. He feared to be- The letter from the doctor was not sworn. It was not a contemporaneous medical record. It wasn't a contemporaneous- Did the judge also point that out? Yes, he did. But he said he would give it limited weight. He seemed to give it no weight, but that wasn't the basis for his denial. I mean, actually, the respondent testified in very, very detailed, credible, clear, consistent manner. And in immigration court, that's sufficient to carry the burden of proof. I may think it's credible. The question is whether the immigration judge thought it was credible. But in order for the judge to make a negative credibility finding, or to say that he has to point to specific things in the record, or he has to say that certain proof should have been submitted to support it, he didn't do any of those things. The only thing that the judge found incredible in this case, and the BIA upheld it, was that the respondent added a new fear at the time of his hearing, that he was afraid of BJP. And in fact, BJP had just come into power in the elections in the last few months. Before I responded, in the last- Yes, sir. Just be quiet. Sorry, sorry. He claimed that he feared the party that was in power. Then when the party that was in power went out of power, then he claimed he feared the other party that came into power, because that party was hostile to Sikhs who have land. They were taking it away. But there's nothing to indicate that your client had any land. So it sounds like whoever's in power, I'm going to be persecuted. This is India. This is the largest democracy in the world. Just by way of context, the Congress party that persecuted him has long persecuted the Sikhs, which he is, in the northern region of India, the farmers in the northern region of India. They've denied them water rights, land rights. That argument doesn't matter unless you can tie it into the specifics of this case. Because otherwise, whatever the Sikh community is here would all get asylum. This individual represented Sikh farmers in the northern region of India and in all of the country reports for all of the years. By the way, the Congress party has been in power in India for seven years. They are still in power, even though BJP won a majority, a national majority in the election in 2014. They certainly don't have all the power there. Congress has tremendous power and authority. BJP is a conservative, fundamentalist Hindu party, and there's all kinds of evidence in the record that they persecute the Sikhs, that they want to get rid of minorities. Mr. Modi has been guilty of human rights violations and wasn't allowed into the United States for many years. What do you say to Judge Walker's observation that you are speaking from, you are generalizing and that therefore any Sikh, and it's a large population, could get asylum in the United States? I think that's completely untrue. I know that they can't. It's the Sikhs who are politically active in the Punjab and in Haryana who are very religious. In Punjab, in this case, it was the Sikhs who supported the Sikh farmers in Haryana and in the Punjab, and it's those individuals who are persecuted, members of parties that go against the ruling parties, which is in this case the Congress party and the BJP party. And those parties are against these particular Sikhs who are active and don't want to blend in with the population. For example, in the Punjab, there are Sikhs who want a separate state, Khalistan, and there is also Sikhs who want more land rights, more water rights, not to fix crop prices. That's the problem in this case. Your client concerning the BJP was just his stated concern at the hearing about the BJP. That's the only evidence with regard. The attacks had nothing to do with the BJP, right? That's correct. But let me make clear that the IJ and the BIA misunderstood the record. The respondent continues to fear the Congress party. They are very powerful. BJP also came in. It was a new fear. It just happened. It happened three weeks before his hearing. It can't just be, I'm afraid. Well, it was a well-founded fear in that he was persecuted in the past by the Congress party who continues to be in power. The judge tried to ignore that and tried to say, well, now that your party is out of power, you're not in danger. And the respondent said, no, I think I am. I may very well be persecuted by them. And in fact, objectively, all of the country reports, and even though the country reports at the time that the BIA was making this decision uphold the fact that the Congress party continued to persecute the Sikhs and continued to have power, and BJP very strongly is against minorities. So this was a very realistic fear that the respondent had. And he was very badly persecuted in the past. But the main point is that this credibility decision really falls apart because he's allowed to add a new fear. The election had taken place three weeks before his hearing. And he gave in all the new proof. I mean, he gave the best evidence he could possibly give. You know, the immigration judge says that the respondent failed in his argument of future persecution because it was speculative. But that's the nature of anything that happens in the future. It hasn't occurred. No, no. So I'm saying how could you. In every case. Right. So how could. Yes. Okay. Good morning, Your Honors. May it please the Court. My name is Evan Schultz. I represent the government. This case involves a straightforward application of how the immigration statute deals with the credibility of witnesses in removal proceedings. Simply put, the petitioner here, Mr. Singh, changed his story. In 2012, as you discussed a minute ago, he submitted an application for asylum where he talked about alleged persecution he had suffered at the hands of a specific political party in India, the Congress Party. Two years later, he testified in immigration court. And he changed his story. He basically said, if you want to look at the record, it's page 150. He said that he wasn't sure anymore whether he feared the Congress Party. And he also went on to say that he had a fear of a political party he had not mentioned before, the BJP. That's an omission if you look in light of his 2012 asylum application. He omitted from that any fear of the BJP. It's also important to talk about how he also said in the record at pages 144, 147, 148, that he knew at the time, when he was in India, before he filed his asylum application, he knew that there was a risk of Sikhs in India having their land taken by the BJP. So that could have been included in the 2012 asylum application. The asylum statute has provisions that anticipate this sort of situation in credibility. It's 8 U.S.C. 1158B1B3. It says that in determining credibility, the immigration judge can look at the consistency between a witness's written statements and oral statements. Well, that's what the agency did here. And that was the basis for them finding— What do you say to the argument, though, that, look, change circumstances. The BJP wasn't in power before. Now he's got new reasons. What do you say to that? Well, for starters, they didn't say that. The immigration judge asked, for instance, why were the documents late? That might have included some of that. And the lawyer said, I'm not sure why these documents are late. There was no— It seems to me that it's an independent problem that the BJP was new to power just within a few weeks of the hearing. And so I guess my question is, what do you say to the argument that, well, the reason he didn't include the BJP before is that the BJP wasn't in power then? Again, I have two responses. One is to reiterate what I just said a minute ago, which is part of the claim that he talked about in his hearing in 2014 and talked about a specific fear of land being confiscated. That is something he knew about. That's really the bulk of what he mentioned. More generally, I would say there are procedures in immigration court for dealing with this. He could have filed a new application for asylum. He could have asked for a continuance to address these things. His lawyers might have taken various steps, and that didn't happen here. So simply put— The part about him knowing earlier about the BJP taking land, that was, you said, 146 to 146? I think it was pages 144 and then 147, 148, if I remember right. Thank you. So that is what the agency did here. It then looked at the inconsistency between the 2012 and the 2014 statements, and it used that as a basis to determine that there was a lack of credibility by Mr. Singh. Now, this court, when it reviews, as Judge Jacobs indicated a few minutes ago, doesn't review de novo. It reviews for substantial evidence. It basically looks at whether or not the agency was reasonable, and it will only step in if there is a compelling reason to do so here. Here, given the clear inconsistency between— No, it's if the evidence would compel a reasonable person to the opposite conclusion. Yes, Judge Walker, that's right. That's a little more than a compelling reason. Yes, Your Honor. Here, even if the court might itself view the case differently, what it comes back to is whether or not the immigration judges and the agency's determination— Apart from the inconsistencies, what is your point on credibility? That he was too vague about his injuries? I'm sorry, I missed the first part of that. Apart from the inconsistency between 2012 and 2014, I take it that you're relying on other aspects that go to his credibility, such as the report of his injuries. The way that the agency focused on things, it actually was very much focused on the inconsistency. That inconsistency? Yes. Was there a reference to demeanor? Not so much, Your Honor. Again, by the time it went through the board— By not so much, was there? To my memory, there was not, Your Honor. Are you suggesting we can't rely on the fact that the immigration judge pointed out that the medical record wasn't sworn, that it wasn't contemporaneous? You're saying that's not what we can rely on because it was all about the inconsistency? When the immigration judge talked about the medical record, it was in the context of burden of proof rather than for credibility, if I remember how the immigration judge structured its opinion. There is another issue here, which didn't come up, but it's worth talking about. His own question, just to be very clear, is that the substantial evidence of lack of credibility that he relied on and that you are relying on is the discrepancy between the statements in 2012 and 2014. Yes, Your Honor. Really, you've sort of suggested that boils down to mistakes by the lawyers. You said he could have done something about it. His lawyers could have done something about this. In its current posture, Your Honor, that hasn't been talked about by the agency per se, and I have nothing to offer on that because the agency didn't discuss that. But you pointed out to me a moment ago that there were procedural steps that could have been taken, postpone the hearing, update the application, to deal with the fact that there had been a change in power, right? Yes, Your Honor, but I have no idea what discussions may or may not have taken place between counsel and client. I wouldn't presume to say that without anything more on the record on that score. And regardless, we're stuck with the inconsistency. That's correct, Your Honor. I would also like to add something. Are you going to talk about what the evidence is that he was persecuted in the first place? Well, Your Honor, this decision, again, went off on the grounds of credibility. It didn't get into whether or not there was... That's correct. I'm not sure I understand your question. I apologize. All the evidence that he was persecuted was his own testimony... Yes, Your Honor. ...which the IJ did not have to accept and did not accept unless there was corroboration. He had two years to come up with corroboration. The corroboration he came up with is a letter that was unauthenticated and unsworn and non-contemporaneous. So my reading of what happened is that there was a finding that he was not credible as to his persecution and that it was not corroborated and that he was willing to swear to anything that would get him asylum, whether it was persecution by one party or another party or any other party that came into power. I think that's a fair summary of what the agency said. Yes, Your Honor. There's two quick points I'd like to make. One is there is a totality of the circumstances point here, and while there is no longer a requirement in the statute that an inconsistency go to the heart of the matter, that was done away with in 2005 amendments, when something does go to the heart of the matter, as it does here, it is still significant and has that much more power. The second point I'd like to make just very quickly, as I see my time is ticking down, goes to the deadlines of the documents that were put forward here. As you mentioned, Judge Jacobs, the immigration judge set a two-year window on April 25, 2012, to submit documents by April 1, 2012. Documents didn't come in until after that deadline had passed, and both the immigration court practice manual and also the regulations, specifically 8 CFR 1003.31c, are very clear about the consequences that the immigration judge can impose. For instance, the regulation I just cited says, quote, that the opportunity to file that application or document shall be deemed waived. That's all that happened here. It was a straightforward application of that regulation. I have nothing further to add. Thank you. We'll hear rebuttal. Thank you. First of all, the practice manual at that time, it was 15-day filing deadline. This was a very unusual deadline on the part of the judge to make it 60 days. It wasn't the normal deadline. This responded- So the deadline was four times what the usual deadline would be? Yes, it was. And you still missed- That's a problem for- Well, it is a problem. It's a problem in the fact that respondents often have a lot of difficulty in getting their relatives back home to produce corroborative background material in a foreign language in a foreign country, and there was a lot of violence in the months before his hearing. What foreign language? We're talking about India. In India, right. His relatives speak- English. Well, actually, his relatives speak- Actually, they speak Punjabi, I believe, and Hindi. India has dozens of languages. The lingua franca is English. It's not that you can't get documents in India. It's that it's difficult for respondents to coordinate with their relatives. How does it get more difficult when you have more time to do it? How does it get more difficult? No, I'm saying he had less time. He had less time, but at any rate, he did get it. Okay, there was normally a 15-day deadline, and this judge expanded it to 60. I think he was the only immigration judge who was doing it at 60 days. But the respondent would normally try to get it in the few months before the hearing. And in any event, but none of this was addressed. The judge never pointed to anything in his decision that showed that he didn't believe the respondent except the change and the additional fear. And it's not an inconsistency. It was an additional new fear. And the respondent, by the way, said that he was terrified that BJP wanted to rid India of Sikhs, that they wanted to kill Sikhs, they committed atrocities against Sikhs. The idea about the land, his fear wasn't that they were going to just grab his land. His fear was that they were cruel to the Sikhs and were throwing them out of another region of India, Gujarat. And this is not something that he would mention in his asylum application, because at that time, Gujarat is a state that's far off from his, and BJP wasn't a national power. So he wouldn't be in danger of that at the time. And it wasn't about land. This was just by way of example of the kind of actions that the BJP took to persecute the Sikhs. But in any event, the judge also in his statement, in his credibility decision, mischaracterized and misunderstood the testimony. Even in talking about what the persecution was, the judge said it was three or four punches. That's completely untrue. He was persecuted by the Congress Party, wasn't he? Right, yes. And now he's complaining about the BJP. So he has no prior persecution from the BJP. No, because the BJP wasn't in power. I understand that. But whoever gets in power is suspect based upon persecution by somebody else. See, that's what I think is so limited in what the judge says, and I think he knows that. India is a complex land with many parties ruling. Just because one party gets a majority for a small amount of time doesn't mean that all of a sudden they control all of the agencies and the police. He can't take advantage in a claim of persecution or fear of persecution by the BJP of the fact that he was actually persecuted by some other person. I agree with you, but I truly believe he was not taking advantage. BJP was really a party. They had killed all of these Muslims in Gujarat in 2002. All of this was in the new evidence that we put in. All of the persecution by BJP. They were not Muslims. No, but the BJP is a conservative, fundamentalist Hindu party, and the fear was that they wanted to rid India of Sikhs. Thank you very much for your time. We'll reserve decision.